UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

FELIPE ACCIOLY VIEIRA,                    )
        *Plaintiff*,                    )
                            )
    v.                    )            CIVIL ACTION NO.
                            )
ANTHONY KORDA and                    )
KORDA LAW FIRM,                    )
        *Defendants*.                    )

## MOTION TO DISMISS

NOW COME Defendants Anthony Korda and Korda Law Firm, by and through their attorneys, Lynn, Lynn, Blackman & Manitsky, P.C., and pursuant to F.R.C.P. 12(b)(2), hereby move to dismiss for lack of personal jurisdiction.  In support, Defendants submit the following memorandum of law.

## Memorandum of Law

This matter arises out of Plaintiff Viera's decision to hire Mr. Korda[1] to provide legal services relative to his U.S. Citizenship and Immigration Services ("USCIS") I-526 Petition by Alien Entrepreneur.

Mr. Korda is the principal of The Korda Law Firm, formerly Korda, Zitt & Associates, with offices in Beverly Hills, California and Naples, Florida.  (Korda Aff. ¶ 1).  He is an attorney licensed in California; he is not licensed in Florida or Vermont.  (Korda Aff. ¶ 2).  Mr. Korda's practice primarily concerns federal U.S. immigration law, including EB-5 visa work for individuals and businesses all over the country, applying for immigration petitions in connection

---

[1] Mr. Viera sued Mr. Korda and his law firm, The Korda Law Firm; at the time of the alleged events, the law firm was named Korda, Zitt & Associates.  For the sake of simplicity, all references to Mr. Korda include his present and former firm.

with many EB-5 Regional Centers, including the one in Vermont.  (Korda Aff. ¶ 3).  Mr. Korda does not and did not advertise or solicit work in Vermont.  (Korda Aff. ¶ 4).

Mr. Viera is a citizen of Brazil who decided to invest in the Jay Peak Hotel Suites Stateside L.P. Program connected to the EB-5 Regional Center Program in Vermont.  (Korda Aff. ¶ 5).  Mr. Viera elected to submit an I-526 Petition in connection with his investment in the EB-5 Immigrant Investor Program.  (Korda Aff. ¶ 6).

A third party referred Mr. Viera to Mr. Korda as an immigration attorney who could assist him with an I-526 Petition.  (Korda Aff. ¶ 7).  The initial communications were between Mr. Viera in Brazil and Mr. Korda in Florida.  (Korda Aff. ¶ 8).  Mr. Viera hired Mr. Korda to provide legal services relative to his U.S. Citizenship and Immigration Services ("USCIS") I-526 Petition by Alien Entrepreneur.  (Korda Aff. ¶ 9).

The Parties formalized their relationship with a Fee Agreement for Legal Services I-526 Immigration Petition by Alien Entrepreneur ("Fee Agreement").  (Korda Aff. ¶ 10).  Among other things, it states, "This Fee Agreement shall be governed by the laws of the State of Florida." (Korda Aff. ¶ 11).  It states that the scope of representation "includes the preparation and filing of the I-526, Immigrant Petition by Alien Entrepreneur  with initial collateral applications" and states, "No other legal services are provided under this Fee Agreement for Legal Services."  (Korda Aff. ¶ 12).  The Fee Agreement also includes visa applications for Mr. Viera's wife and daughter. (Korda Aff. ¶ 13).

The Fee Agreement includes disclosures explaining that Mr. Korda may represent other investors in the same EB-5 Investor Program and that it is Mr. Viera's obligation to determine whether the investment is appropriate for him.  (Korda Aff. ¶ 14).  It states, "A Client who enters into this Fee Agreement for Legal Services is certifying and does hereby certify to the Firm that

he or she has reached a firm and final decision to invest in Jay Park Hotel Suites Stateside L.P. Project independently of any representations made by or attributed to the Firm regarding the nature and quality of this project." (Korda Aff. ¶ 15).

Mr. Viera executed the Fee Agreement in Brazil and Mr. Korda signed in Florida. (Korda Aff. ¶ 16). After exchanging information with Mr. Viera in Brazil, Mr. Korda completed the I-526 Immigrant Petition by Alien Entrepreneur in Florida and submitted it to the USCIS Office in California. (Korda Aff. ¶ 17). The USCIS Office in California issued an I-797 Notice of Action approving the I-526 Petition and forwarding the approved Petition to Department of State National Visa Center in New Hampshire to process the approved immigrant visa petitions for Mr. Viera and his family. (Korda Aff. ¶ 18). Upon receipt of the visas, Mr. Viera and his family moved from Brazil to Vermont. (Korda Aff. ¶ 19). Mr. Viera did not retain Mr. Kroda to do any further work following the approval of the I-526 Immigrant Petition by Alien Entrepreneur. (Korda Aff. ¶ 20).

During the course of the representation, the Parties never met in Vermont, nor did they exchange communications while either of them was in Vermont. (Korda Aff. ¶ 21). Mr. Korda never reviewed Vermont law, nor did he advise Mr. Viera concerning Vermont law. (Korda Aff. ¶ 22). When Mr. Viera arranged the payment of the Legal Fee, he was resident in Brazil, and the funds were deposited into Mr. Korda's Business Account at a Florida bank. (Korda Aff. ¶ 23).

## Argument

Simply put, Mr. Korda practices federal immigration law, handled outside of Vermont, without reference to Vermont law. Mr. Korda did not solicit Mr. Viera's business in Vermont. Mr. Korda's representation of Mr. Viera is only tangentially connected to Vermont by virtue of the location of the investment selected by Mr. Viera. Their Fee Agreement expressly states that Mr. Korda is only assisting Mr. Viera with the immigration petition, not the investment decision.

3

The Fee Agreement states that their relationship is governed by Florida law.  Mr. Korda did not foresee being haled into court in Vermont and Vermont has no special interest in resolving the allegations.  As the Court lacks personal jurisdiction over Mr. Korda, it should grant the motion to dismiss.

### I.   Vermont does not have general jurisdiction over Mr. Korda and his Florida-based law firm.

"The court may determine a Rule 12(b)(2) motion on the basis of pleadings and affidavits alone" and the plaintiff bears the burden "to make a prima facie showing that jurisdiction exists." *Bertolini-Mier v. Upper Valley Neurology Neurosurgery, P.C.*, No. 5:16-CV-35, 2016 WL 7174646, at *2 (D. Vt. Dec. 7, 2016) (citing *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (per curiam) and *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013)).

Because "Vermont's long-arm statute, 12 V.S.A. § 913(b), reflects a clear policy to assert jurisdiction over individual defendants to the full extent permitted by the Due Process Clause," the analysis considers "whether the court's exercise of personal jurisdiction over the defendant satisfies the requirements of due process." *Id.* (citing *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) and *Bechard v. Constanzo*, 810 F. Supp. 579, 582–83 (D. Vt. 1992)).

"Consistent with the requirements of due process, the court 'may exercise two types of personal jurisdiction over a corporate defendant properly served with process. These are specific (also called 'case-linked') jurisdiction and general (or 'all-purpose') jurisdiction.'" *Id.* (quoting *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016)).  "'Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state.'" *Id.* (quoting *Brown*).  "'General jurisdiction, in contrast, permits a court to adjudicate any cause of

action against the corporate defendant, wherever arising, and whoever the plaintiff." *Id.* (quoting *Brown*).

"Whether specific or general, however, the exercise of personal jurisdiction over a defendant is informed and limited by the U.S. Constitution's guarantee of due process, which requires that any jurisdictional exercise be consistent with 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Here, there is no basis for a claim of general jurisdiction over Mr. Korda and his out-of-state firm. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853–54 (2011) (restricting general jurisdiction to a place where an individual or corporation is "at home," meaning the state where the entity has incorporated and the state in which it maintains its principal place of business). Moreover, the exercise of general jurisdiction over a Florida law firm that does not advertise or practice in Vermont would offend traditional notions of fair play and substantial justice, for reasons more specifically outlined below.

Thus, the only basis for jurisdiction is specific jurisdiction. For reasons outlined below, Plaintiff cannot satisfy any of the requirements necessary to establish specific jurisdiction for Mr. Korda in Vermont.

II.   **Vermont does not have specific jurisdiction over Mr. Korda based on legal services rendered in Florida to Mr. Viera in Brazil.**

   A.   **Mr. Korda did not have the necessary minimum contacts with Vermont and did not purposely avail himself of the privilege of doing business here as required to establish specific jurisdiction.**

"'Where the claim arises out of, or relates to, the defendant's contacts within the forum—i.e., specific jurisdiction [is asserted]—minimum contacts [necessary to support such jurisdiction] exist where the defendant purposefully availed itself of the privilege of doing business in the forum

and could foresee being haled into court there.'" *Bertolini-Mier*, No. 5:16-CV-35, 2016 WL 7174646, at *6 (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013) (alterations in original)). "This test includes a 'nexus' requirement: the cause of action must 'relate to' the defendant's minimum contacts with the forum." *Id*. (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 166–67 (2d Cir. 2010).

Numerous courts have rejected claims of specific jurisdiction over out-of-state attorneys where the attorney did not solicit the client specifically or clients generally in the forum state, did not render services in the state, did not advise the client about the forum state law, and had no contact other than letters or phone calls to the state. *See, e.g., Lipson v. Birch*, 46 F. Supp. 3d 206, 219 (E.D.N.Y. 2014) ("[T]he record does not show that Birch and Williamson regularly do or solicit business in New York, and it is devoid of any evidence demonstrating either a course of conduct in New York, persistent or otherwise, on their part. Further, while the Plaintiff alleges that Birch and Williamson seek or have been paid in excess of $240,000 for their services rendered on behalf of the Plaintiff, there is no evidence that they rendered any of these services "in the state"— that is, New York."); *Scott v. Sonnet, Sale & Kuehne, P.A.*, 989 F. Supp. 542, 545 (S.D.N.Y. 1998) ("The defendants were Florida lawyers living in Florida and a Florida law firm. Plaintiffs were Massachusetts residents. Plaintiffs do not allege facts that show that, at the time the defendants began representing them, there was any reference by the parties to New York or any contact with New York relating to defendants' representation of plaintiffs."); *Van Essche v. Leroy*, 692 F. Supp. 320, 327 (S.D.N.Y. 1988) ("Because the alleged tort committed by defendants occurred in Texas, and because the alleged injury was sustained by plaintiff in Monaco, no jurisdiction exists over defendants [based on a letter sent to New York by a Texas attorney.]").

*See also Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 292 (1st Cir. 1999) ("Without evidence that the defendant actually reached out to the plaintiff's state of residence to create a relationship—say, by solicitation—the mere fact that the defendant willingly entered into a tendered relationship does not carry the day."); *Sawtelle v. Farrell*, 70 F.3d 1381, 1392 (1st Cir. 1995) (holding that contacts between a Virginia law firm and attorney and New Hampshire were insufficient to allow the exercise of personal jurisdiction where contacts with New Hampshire consisted primarily of communications to the state in which the client happened to live, the client initiated the contact, and no legal services were performed in New Hampshire); *Kowalski v. Doherty, Wallace, Pillsbury & Murphy,* 787 F.2d 7 (1st Cir. 1986) ("[o]ut-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in the forum state, where the law firm is solicited in its home state and takes no affirmative action to promote business within the forum state"); *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226–27 (8th Cir. 1987) (where law firm's only substantial connection with the forum state was its work on a legal matter for a forum resident taking place outside the forum, law firm did not purposefully avail itself of the benefits and protections of the forum state); *Sher v. Johnson*, 911 F.2d 1357, 1363 (9th Cir. 1990) ("[o]ut-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in the forum state, where the law firm is solicited in its home state and takes no affirmative action to promote business within the forum state"); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1534 (10th Cir. 1996) (holding that "purposeful availment" component was not met where "the only connection between [the attorney] and [the plaintiff] was the opinion letter [the plaintiff] requested"); *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1 (D.D.C. 2009) (Netherlands law firm's telephone calls, e-mails, facsimiles, and mailings, including invoices, to

the Delaware corporation's District of Columbia office did not demonstrate purposeful availment or minimum contacts sufficient to subject the firm to personal jurisdiction on the basis of transacting business, since such communications were incidental to nearly every business relationship and were not indicative of any desire to do business in the District).

With regard to the present case, *Yates v. Muir*, 112 Ill. 2d 205, 492 N.E.2d 1267 (1986), is instructive concerning an out-of-state attorney assisting a client with matters of federal law.  There, an Illinois resident sued his Kentucky attorney for malpractice related to his federal administrative law appeal of his disability claim under the Civil Service Reform Act of 1978 (5 U.S.C. sec. 1101 et seq. (1982)).  *Id*. at 206–08, 492 N.E.2d at 1267-68.  Rejecting specific jurisdiction in Illinois, *Yates* explained:

> Here, the plaintiff retained services of an attorney who practiced in Kentucky. The matter on which the attorney represented the plaintiff was a Federal administrative claim which did not require the attorney to appear in any State court or Federal court in Illinois, or to have a license to practice here, or, for that matter, to be present in Illinois. The legal services performed by the defendant were performed exclusively in Kentucky; if there was any malpractice in rendering those services it took place in Kentucky. The neglect, if any, of the attorney was his failure in Kentucky to arrange for the filing of the appeal. When the instruments for the appeal were tardily prepared they were drawn in Kentucky. Though this may seem as much a metaphysical point as a legal one, this tardy preparation, as well as the neglect that was the basis of the malpractice action, took place in Kentucky.

*Id*. at 209–10, 492 N.E.2d at 1269.  *Yates* rejected the significance of the fact that the federal office where the attorney filed the untimely appeal was in Illinois.  *Id*.

Here, there is even less of a connection between the attorney and the forum than in *Yates*. A Brazilian client solicited a Florida attorney in Florida to assist him with his federal immigration petition.  The Florida attorney did not solicit work in Vermont.  During the representation, Parties exchanged all communications between Brazil and Florida.  They never met in Vermont and never discussed Vermont law; they never even exchanged communications with either party in Vermont.

The Florida attorney completed the Petition in Florida with reference to federal immigration law and filed it with the federal office in California; the approved Petition was sent to New Hampshire and then Brazil.   The Brazilian client paid the Florida attorney in Florida. There is simply no connection to Vermont.

Indeed, the Complaint does not allege any contacts between Mr. Korda and Vermont relative to his representation of Mr. Viera.   The only connection alleged is that many years earlier, Mr. Korda invested his own money in the EB-5 Regional Center in Vermont.  However, this fails the "nexus" requirement as it is completely unrelated to the present malpractice claim.  *See DH Servs., LLC v. Positive Impact, Inc.*, No. 12 CIV. 6153 RA, 2014 WL 496875, at *8 (S.D.N.Y. Feb. 5, 2014) (rejecting jurisdiction based on earlier receipt of grants from foundations in New York where "Plaintiff has failed to demonstrate a nexus between Defendant's receipt of the grants and the alleged trademark infringement").

Based on the foregoing, Mr. Korda did not have minimum contacts with Vermont related to the claim, nor did he purposely avail himself of the benefit of doing business as an attorney in Vermont.  Mr. Korda handles federal immigration petitions all over the country and his practice has no specific connection to Vermont other than the fact that one of the approximately 600 regional centers in the United States is in Vermont.  Accordingly, Vermont does not have personal jurisdiction over Mr. Korda and his law firm with regard to this case.

### B. It is not reasonable for Vermont to exercise jurisdiction over a Florida attorney representing a Brazilian client concerning federal immigration law.

In the unlikely event that the Court finds that Mr. Korda purposely availed himself of the benefit of doing business in Vermont, it must still consider whether Vermont's exercise of jurisdiction over this Florida attorney is reasonable.   Without question, it is not.

The "reasonableness" component requires that the assertion of jurisdiction over a defendant must "not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339 (1940)).  *See Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026 (1987).

The "reasonableness analysis" considers the following five factors: 1) the burden that the exercise of jurisdiction will impose on the defendant; 2) the interests of the forum state in adjudicating the case; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and 5) the shared interest of the states in furthering substantive social policies."  *Estate of Martinez v. Yavorcik*, 455 F. Supp. 2d 115, 120, 123 (D. Conn. 2006) (citing *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 568 (2d Cir.1996) and *Asahi Metal Indus. Co., supra*).

In *Estate of Martinez,* the court declined to exercise jurisdiction because the burden on the Ohio attorney defendants in defending the action in Connecticut would be substantial and the interest of Ohio in adjudicating the attorney malpractice suit strongly outweighed any interest Connecticut may have, as the case concerned the alleged malpractice pursuant to representation agreements entered into Ohio.  *Id*. at 123-24.  Among other things, the court noted that the attorneys never traveled from Ohio to Connecticut for the case, never filed suit in Connecticut, never advertised in or solicited business from Connecticut, and did not enter into the agreement in Connecticut.  *Id.  See also. Litchfield Fin. Corp. v. Buyers Source Real Estate Grp*., 389 F. Supp. 2d 80, 90-91 (D. Mass. 2005) (considering five factors and rejecting jurisdiction over out-of-state solo practitioner handling complex multi-state land financing deal where forum state had only a "marginal interest in adjudicating the dispute" and plaintiff had limited connections to the state).

Here, all five factors weigh against exercising jurisdiction over Mr. Korda.  First, it would be a substantial burden for this Florida resident to have to repeatedly travel to Vermont to defend against the litigation.  Second, Vermont has no interest in adjudicating a malpractice claim against a Florida attorney resulting from services rendered in Florida, under a Fee Agreement governed by Florida law, particularly where the representation solely concerned federal immigration law. Third, Mr. Viera's allegations are only tenuously connected to Vermont as he was a Brazilian citizen during the course of the representation and all of their interactions took place between Florida and Brazil having nothing to do with Vermont; only after the alleged malpractice did Mr. Viera move to Vermont.  Fourth, there is no benefit to the judicial system as a whole in permitting Vermont to hear the case, as opposed to Florida.  Fifth, the case does not concern substantive social policies, at least none that outweighs the prejudice to Mr. Korda of having to defend against litigation in Vermont.

In light of the foregoing, it is not reasonable for Vermont to exercise jurisdiction over Mr. Korda with regard to the present case.  Mr. Viera is a sophisticated international investor who invested over a half million dollars in the EB-5 program.  Mr. Viera sought out Mr. Korda's services and entered into the Fee Agreement, which expressly states that it is governed by Florida law.  The Fee Agreement states that Mr. Korda was not advising him concerning the investment in the EB-5 program at Jay Peak, only that he was representing him with regard to his I-526 Petition.  Mr. Korda never expect he could be haled into a Vermont court and it offends traditional notions of fair play to permit Mr. Viera to sue him in Vermont when all of their interactions were between Florida and Brazil.

It further offends traditional notions of fair play and substantial justice to use Mr. Korda's own investment in the EB-5 Regional Center in Vermont as the sole basis for exercising personal

jurisdiction over Mr. Korda, as it would discourage investors, who would need to be concerned about investing anywhere other than in their home states or risk being haled into court on unrelated matters.

Because it is not reasonable to exercise jurisdiction over Mr. Korda based on the specifics of his representation of Mr. Viera, the Court should grant the motion to dismiss.

<u>**Conclusion**</u>

For the foregoing reasons, Defendants respectfully request that the Court GRANT their motion to dismiss for lack of personal jurisdiction.

DATED at Burlington, Vermont, this 10th day of October, 2017.

ANTHONY KORDA and KORDA LAW FIRM


By:      *s/ Pietro J. Lynn*
         Pietro J. Lynn, Esq.
         Sean M. Toohey, Esq.
         Lynn, Lynn, Blackman & Manitsky, P.C.
         *Attorneys for Defendants*
         76 St. Paul Street, Suite 400
         Burlington, VT 05401
         plynn@lynnlawvt.com